IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                    Criminal No. 3:22cr6 (DJN)

ALLEN W. HECTOR,
    Defendant.

## MEMORANDUM OPINION
### (Denying Motion to Suppress)

    This matter comes before the Court on Defendant Allen W. Hector's Motion to Suppress and Request for *Franks* Hearing, moving to hold an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and to suppress the evidence that law enforcement obtained after executing a state search warrant, including all fruits flowing therefrom.  (ECF No. 20.)  For the reasons set forth below, the Court will DENY Defendant's Motion to Suppress and related request for a *Franks* hearing.

## I.      BACKGROUND

### A.    Factual Background

    Late in the evening of July 23, 2021, Chesterfield County Police Department ("CCPD") officers responded to a disturbance call describing a woman banging on a door and asking a resident to call the police.  (Govt.'s Resp. Opp'n Def.'s Mot. Suppress ("Resp.") at 1.)  Upon arrival, the officers encountered a woman ("Complainant") with lacerations on her forehead and body.  (Resp. at 1.)  Complainant, whom CCPD officers later described as "a little twitchy" and

"probably on something,"[1] told the responding officers that she had just escaped from a man who held her hostage and raped her. (Def.'s Mot. Suppress ("Mot.") at 7; Resp. at 1.) Emergency personnel transported Complainant to Chippenham Hospital. (Resp. at 1.)

At Chippenham Hospital, Complainant indicated to police that her assailant's apartment, where the alleged sexual assault took place, was located in Richmond. (Resp. at 1.) CCPD officers therefore contacted the Richmond Police Department ("RPD"), and RPD dispatched an officer to Chippenham Hospital. (Resp. at 1.) During the officer's initial interview, Complainant told the officer that while she was inside her assailant's apartment, her assailant exited the apartment and knocked loudly on the neighboring apartment's door. (Resp. at 2.) The officer spoke with RPD dispatch and confirmed that RPD received a call related to the events that Complainant described. (Resp. at 2.) The incident occurred at an apartment complex located at 37 Labrook Drive, Richmond, Virginia 23225. (Resp. at 2.)

In the early morning hours of July 24, 2021, RPD assigned the case to Detective M.J. Ahnstrom ("Ahnstrom"). (Resp. at 2.) Detective Ahnstrom responded to Chippenham Hospital to interview Complainant. (Resp. at 2.) Complainant recounted to Detective Ahnstrom that on the evening of July 22, 2021, a man (ultimately, her assailant) approached her at a local McDonald's restaurant. (Resp. at 2.) The man offered for Complainant to stay at his apartment, to which Complainant, who was homeless at the time, agreed. (Resp. at 2.) Complainant then entered the man's vehicle and accompanied him to his apartment. (Resp. at 2.)

Complainant further relayed to Detective Ahnstrom that when they arrived at his apartment, the man left for several hours. (Mot. at 2; Resp. at 2.) When he returned,

---

[1]     In his motion, Defendant states the following: "Hospital records confirm that [Complainant] was high upon admission to the hospital and admitted to drug use on the date of the events." (Mot. at 7.)

2

Complainant stated, the man appeared to be high. (Resp. at 2.) At this point, he accused Complainant of inviting strangers into his apartment. (Resp. at 2.) The man assaulted Complainant, including by poking her in the ribs with a rifle and holding a handgun to her head. (Resp. at 2.) Ultimately, he told Complainant that he would shoot her if she did not have sex with him. (Resp. at 2.) The man then proceeded to sexually assault Complainant. (Resp. at 2.)

Complainant stated that after sexually assaulting her, her assailant then forced her out of the house and into his car. (Affidavit ("Aff.") ¶ 4.) She and the man proceeded to drive around for an unknown period of time. (Aff. ¶ 4.) During the drive, the man threatened Complainant with a handgun, including by discharging the gun through the top of the windshield on the driver's side.[2] (Resp. at 2.) Later, the man drove to a Raceway gas station located on Midlothian Turnpike and sent Complainant inside to pay for gas. (Resp. at 2.) Complainant stated that she asked the gas station clerk to call 911, but she and her assailant left the gas station before police arrived. (Resp. at 2-3.) Complainant and her assailant then observed police at the Raceway gas station from a nearby street. (Resp. at 3.) Shortly thereafter, the man drove them back to his apartment. (Resp. at 3.)

Upon return to his apartment, the man again sexually assaulted Complainant. (Resp. at 3.) After confiscating Complainant's clothing and providing her with other clothing to wear, both the assailant and Complainant returned to his vehicle. (Resp. at 3.) While in the car, the

---

[2]     The Government's recitation of the facts in its Response (ECF No. 21) conflicts with Detective Ahnstrom's Affidavit (ECF No. 20-1) as to when Complainant's assailant discharged a handgun through his windshield. The Government states that the foregoing event occurred as recounted above, i.e., during the first drive that Complainant took with her assailant after reaching his apartment. (Resp. at 2.) Detective Ahnstrom's Affidavit states that the assailant fired his weapon through the windshield during a second, later drive with Complainant, discussed *infra*. (Aff. ¶ 4.) The Court need not and does not resolve this discrepancy to decide Defendant's Motion.

assailant held a gun to Complainant's head and threatened her. (Resp. at 3.) The man again

drove on Midlothian Turnpike. (Resp. at 3.) As the vehicle approached the intersection of

Midlothian Turnpike and Tuxford Road, Complainant asked her assailant if she could lower her

window. (Resp. at 3.) Once she partially lowered her window, Complainant jumped through the

window and onto the roadway. (Resp. at 3.) Complainant then knocked on doors until someone

contacted CCPD. (Resp. at 3.)

Complainant informed Detective Ahnstrom that she knew her assailant by the name

"Tyrone." (Resp. at 3.) She described her assailant as a black male, bald and with a dark skin

tone. (Resp. at 3.) Complainant further stated that her assailant drove a red car that she believed

to be either a Cadillac or a Chrysler 300. (Resp. at 3.) Detective Ahnstrom then terminated the

interview and left Chippenham Hospital. (Resp. at 3.)

Based on the information provided to the initial responding RPD officer, Detective

Ahnstrom drove to the apartment complex located at 37 Labrook Drive. (Resp. at 3.) Among

the cars parked at the complex, Ahnstrom observed only one red vehicle: a Chrysler 300. (Resp.

at 3.) Ahnstrom examined the red Chrysler 300 and noticed a bullet hole in the top of the

windshield. (Resp. at 3.) Ahnstrom then searched an RPD database for the vehicle's license

plate number and found that the vehicle was registered in Defendant's name, with an associated

address of 37 Labrook Drive, Apartment 8, Richmond, Virginia 23225. (Resp. at 3; Aff. ¶ 4.)

Detective Ahnstrom then located a picture of Defendant and found that the picture matched

Complainant's description of her assailant. (Resp. at 3.)

Detective Ahnstrom returned to Chippenham Hospital, accompanied by RPD Officer

Cangelosi, to present Complainant with a photographic lineup. (Resp. at 4; Mot. at 7.) When

Officer Cangelosi showed Complainant the lineup, Complainant could not identify Defendant as

4

her assailant. (Resp. at 4.) Officer Cangelosi noted, however, that Complainant "stopped on [Defendant]'s photo several times and said that [Defendant] looked like her assailant but that she believed her assailant was older and had thinner cheeks." (Resp. at 4.)

After the lineup, Ahnstrom asked Complainant if she knew her assailant's apartment number. (Resp. at 4.) Complainant indicated that the apartment was on the complex's second floor and was two or three doors from the left. (Resp. at 4; Aff. ¶ 4.) Complainant further described a cloth bag sitting by the front door to the apartment. (Resp. at 4.) After gathering this information, Detective Ahnstrom left Chippenham Hospital and returned to the apartment complex located at 37 Labrook Drive. (Resp. at 4.) Ahnstrom observed that Apartment 8 was on the second floor, three doors from the left. (Resp. at 4.) Ahnstrom also observed a cloth bag sitting by the front door to the apartment. (Resp. at 4.)

At 8:27 a.m. on July 24, 2021, Detective Ahnstrom swore to a search warrant affidavit before a state magistrate. (Resp. at 4.) Item 4 of the affidavit required the affiant officer to state "[t]he material facts constituting probable cause that the search should be made." (Aff. ¶ 4.) In this section, Detective Ahnstrom stated:

> On July 24, 2021, at approximately 0100hrs your affiant was assigned a sexual assault that took place in the Labrook Terrace Apartment complex located at 37 Labrook Drive Richmond VA. This complex is south of the James River. Your affiant was dispatched to Chippenham Hospital where he came into contact with the victim MO. Upon coming into contact with the victim your affiant was able to conduct an interview. During the interview your affiant was advised that on or about Thursday evening the victim was met by the suspect in the Midlothian corridor at which time the suspect approached the victim and began talking with her ultimately offering her a place to stay for several days. The victim being homeless and having no other place to go accepted the suspect's offer and got into his vehicle at which time he took the victim back to his apartment.

> The suspect left for several hours before returning to the residence at which time he woke the victim and accused her of having other men in the apartment. The victim advised you affiant that the suspect appeared high, and she believes him to be on narcotics possibly Meth. The suspect then became

physically abusive punching the victim and striking her about her body with a bat after which he poked her in the ribs with a rifle and pointed a handgun at her head.

The suspect told the victim several times that he was going to kill her eventually he gave the victim an ultimatum and advised her that he would either shoot her or have sex with her. The victim responded by saying that she didn't want to die and at this time the suspect took her into his bedroom and sexually assaulted her. The suspect then took the victim out of the house and drove around for an unknown period of time before returning to the house where he made the victim strip off her clothing and give it to him. The suspect then placed all of the victim's belongings into plastic bags after which he once again sexually assaulted her.

After the second assault the suspect took the victim for another drive during which he continued threatening her with one of his firearms. While doing so the suspect discharged a round into the top of his windshield on the driver's side. The suspect continued to drive until the victim was able to jump from the moving car to escape. Your affiant was told by the victim that she was sexually assaulted by the suspect and she was able to describe the apartment and its location to Officers which allowed Police to identify the building as the Labrook Terrace Apartment Complex at 37 Labrook Drive. After speaking with the victim your affiant went to 37 Labrook Drive at which time he found a red Chrysler 300 ZY7994 parked in the parking lot this was the only red vehicle parked in the lot. Your affiant then approached this vehicle and found it to have a single bullet hole in the driver's side of the windshield near the top as the victim advised.

Your affiant utilized Virginia DMV to obtain information for the vehicle and its owner founding the owner of the vehicle to be Allen HECTOR. HECTOR has the registered address of 37 Labrook Drive 8 Richmond VA 23225[.]

Your affiant returned to the victim and asked her to describe the apartment to him. The victim advised that the apartment was near the top of the stairs in the complex and that it was the second or third door from the left on the second floor. The victim also advised that there was some sort of cloth bag near the door. Your affiant once again returned to the complex and discovered apartment 8s door as described all the way down to the cloth bag sitting to the left of the door. (Exhibit A).

(Aff. ¶ 4.)

Item 7 of the affidavit instructed the affiant officer to describe how he came to know the information in the affidavit. (Aff. ¶ 7.) There, Detective Ahnstrom checked the box indicating that he relied "in whole or in part" on information provided by an informer. (Aff. ¶ 7.) The

6

affidavit instructed the affiant officer to describe the facts establishing "[t]he credibility of the person(s) providing this information . . . and[] the reliability of the information." (Aff. ¶ 7.) Detective Ahnstrom stated:

> Your Affiant, Det. Michael Ahnstrom, has been a Richmond Police Officer for over 15 years and is currently assigned as a detective with the Major Crimes – Aggravated Assault/Sex Crimes Unit.  This affiant is responsible for investigations involving aggravated assaults, sexual assaults and various other crimes against persons, many of which include the collection and analysis of digital and physical evidence.  This affiant has prosecuted cases that have led to arrests and convictions in both the City of Richmond District and Circuit Court(s).
>
> Statements from the victim, as they relate to the suspect vehicle and his apartment have been verified by visual observations from your affiant.

(Aff. ¶ 7.)  The state magistrate granted the search warrant on July 24, 2021.

On July 26, 2021, Detective Ahnstrom returned to Chippenham Hospital and again spoke with Complainant to identify any other locations that Complainant and her assailant visited while together. (Resp. at 6.)  After speaking with Complainant, Ahnstrom searched for record of a 911 call made from the Raceway gas station on July 23, 2021.  (Resp. at 6.)  Ahnstrom could not locate any such record.  (Resp. at 6.)

On July 28, 2021, RPD officers detained Defendant during a traffic stop on Chippenham Highway such that Defendant would be in police custody when police executed the search warrant at his apartment. (Mot. at 3.)  During the stop, RPD Detective Kinery asked Defendant if he would like to volunteer the keys to his apartment or have RPD officers force entry.  (Mot. at 3.)  Defendant gave his keys to Detective Kinery.  (Mot. at 3.)  Before executing the warrant, Detective Kinery asked Defendant if his apartment contained any items that might cause RPD officers harm; Defendant stated that he kept two guns in his apartment — one in a closet and one on the bed.  (Mot. at 3.)  RPD officers executed the search warrant for Defendant's apartment and found the two firearms, resulting in the current federal charge.  (Mot. at 3.)

### B.    Procedural History

On January 5, 2022, the Grand Jury returned an Indictment charging Defendant with one

count of unlawful and knowing possession of a firearm, namely, a .38 caliber Taurus revolver

and a semi-automatic Zastava pistol, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)  On

July 7, 2022, Defendant moved for a *Franks* hearing and to suppress the evidence that law

enforcement collected during the execution of the search warrant and Defendant's statements

during the traffic stop.  (Mot. at 1.)  On July 21, 2022, the Government responded (ECF No. 21),

and on July 28, 2022, Defendant replied (ECF No. 22).  Defendant's Motion now stands ripe for

review.

## II.    STANDARD OF REVIEW

"An accused is generally not entitled to challenge the veracity of a facially valid search

warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).  But, "[i]n *Franks*

*v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that in certain narrowly defined

circumstances a defendant" can make such an attack. *United States v. Colkley*, 899 F.2d 297,

300 (4th Cir. 1990).  Recognizing a "strong 'presumption of validity with respect to the affidavit

supporting the search warrant,'" the *Franks* Court fashioned a rule of "limited scope." *Id.*

(quoting *Franks v. Delaware*, 438 U.S. at 167, 171).  Thus, *Franks* offers a narrow opportunity

for a defendant to challenge a presumptively valid warrant by protecting "against omissions that

are designed to mislead, or that are made in reckless disregard of whether they would mislead,

the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021).

In particular, a defendant must make a "substantial preliminary showing" that (1) law

enforcement made "a false statement"; (2) the false statement was made "knowingly and

intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary

to the finding of probable cause." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019)
(citations omitted).

For the first element, falsity, a defendant must set forth more than a conclusory showing,
and he must include "a detailed offer of proof." *Colkley*, 899 F.2d at 300 (citing *Franks*, 438
U.S. at 171). The defendant cannot simply allege a "subjective disagreement" with how law
enforcement characterized the facts in its affidavit. *Moody*, 931 F.3d at 370.

Under the second prong, intentionality, to show that law enforcement made false
statements or omitted information in the affidavit, the defendant must provide facts to support his
assertion. *Id.* at 371. This prong necessitates proof of the affiant officer's "intent to mislead, or .
. . reckless disregard for whether the statements would mislead, the magistrate." *Id.* "An
innocent or even negligent mistake by [an] officer will not suffice." *Id.* (citing *Franks*, 438 U.S.
at 170). Indeed, the Fourth Circuit has made clear the high standard for establishing reckless
disregard in this context:

> . . . reckless disregard in the *Franks* context requires a showing that the affiant
> personally recognized the risk of making the affidavit misleading. What the
> officer-affiant *should* have known does not matter if he did not *in fact* know.
> Reckless disregard is a subjective inquiry; it is not negligence nor even gross
> negligence. To establish a *Franks* violation, the particular affiant must have been
> subjectively aware that the false statement or omission would create a risk of
> misleading the reviewing magistrate judge and nevertheless chose to run that risk.

*United States v. Pulley,* 987 F.3d 370, 377 (4th Cir. 2021) (internal citations omitted).

In addition to affirmative false statements, the Fourth Circuit has extended *Franks* to
intentional or reckless omissions from affidavits. *Colkley*, 899 F.2d at 300-02. But importantly,
the Fourth Circuit has made clear that "[w]hen a defendant relies on an omission, this heavy
burden is even harder." *Haas*, 986 F.3d at 474. The court cautioned that "the affirmative
inclusion of false information in an affidavit" would more likely invalidate a warrant than would

an omission, for "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Colkley*, 899 F.2d at 300-01.

Thus, to satisfy this prong as it applies to omissions, a defendant must show that the omissions were "*designed to mislead*" or were made with "*reckless disregard of whether they would mislead*," the magistrate. *Id.* at 301 (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). This required showing imposes a higher burden on a defendant "making claims of omissions rather than affirmative false statements." *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011) (citing *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008)). Specifically, "[a]n officer acts with reckless disregard when she fails to inform the magistrate of facts she subjectively knew would negate probable cause. And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality." *Haas*, 986 F.3d at 475.

Third, and finally, the defendant must demonstrate materiality, meaning that the offending information must be necessary for the existence of probable cause. *Franks*, 438 U.S. at 171-72. To make this determination, courts consider the totality of the circumstances. *Colkley*, 899 F.2d at 301 (citation omitted). An omission is material if "the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Haas*, 986 F.3d at 474 (citations omitted). The materiality prong serves *Franks'* ultimate goal: "to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *Moody*, 931 F.3d at 371 (citation omitted).

If the defendant furnishes a "substantial preliminary showing" that satisfies these three factors, then the court must hold a *Franks* hearing to develop the evidence on the sufficiency of

the affidavit. *Haas*, 986 F.3d at 474. After the hearing, if the defendant establishes these prongs

by a preponderance of the evidence, "the search warrant must be voided and the fruits of the

search excluded." *Franks*, 438 U.S. at 156.

### III. ANALYSIS

Here, Defendant argues that the Court should hold a *Franks* hearing, asserting that

Detective Ahnstrom omitted key information from the search warrant affidavit. Although the

Court finds that the warrant affidavit omits multiple facts, Defendant has not met his burden of

demonstrating that these omissions evidence intentionality or recklessness, nor that the omissions

were material to the magistrate's finding of probable cause. Thus, the Court will deny

Defendant's Motion for a *Franks* hearing, as explained below.

### A. Absence of Any Record of 911 Call from the Raceway Gas Station

Defendant first argues that he is entitled to a *Franks* hearing, because "the affidavit

omitted detailed parts of the complaining witness's statements that could not be corroborated."

(Mot. at 9.) Specifically, Defendant points to Detective Ahnstrom's inability to confirm

Complainant's version of events involving the Raceway gas station. (Mot. at 9.) Because

Defendant cannot establish that Ahnstrom omitted this information intentionally, Defendant's

first *Franks* argument falls flat. *Moody*, 931 F.3d at 371.

Detective Ahnstrom's affidavit failed to describe both (1) his unsuccessful efforts to

locate any record of a 911 call made from the Raceway gas station on July 23, 2022, and (2) the

lack of video footage of either Complainant or Defendant at the Raceway gas station on that

same date. (Mot. at 9.) These facts, Defendant contends, "call[] into question the complaining

witness's reliability," and their omission from the affidavit, Defendant continues, "prevented a

neutral Magistrate from being able to accurately assess the complaining witness's reliability and veracity." (Mot. at 9.)

Defendant contends that without an accurate assessment of Complainant's reliability, the magistrate could not undertake the "totality of the circumstances" inquiry necessary to find probable cause. (Reply at 2) (citing *Illinois v. Gates*, 462 U.S. 231, 238 (1983)). The omissions, Defendant concludes, were therefore material. (Reply at 3.)

Initially, the Court notes that the absence of a 911 call from the Raceway gas station on the date of the alleged assaults proves little about Complainant's credibility. The conclusion that Complainant fabricated or misremembered her request to the Raceway clerk to call 911 need not necessarily follow from Detective Ahnstrom's finding that no such call was made. Rather, Detective Ahnstrom's findings remain entirely consistent with a scenario in which the Raceway clerk to whom Complainant spoke simply failed to act upon Complainant's request. To definitively undermine Complainant's credibility on this point, Defendant would need to establish that Complainant made no request to the Raceway clerk at all, a showing Defendant has not made. Taking Defendant's argument on its own terms, then, the omitted information bears little relevance to Complainant's reliability as an informant.

Further, Defendant's argument falls flat at *Franks'* second prong — intentionality. Defendant cannot make the necessary showing that Detective Ahnstrom omitted the foregoing facts to intentionally mislead, or with reckless disregard of whether their omission would mislead, the state magistrate. *Moody*, 931 F.3d at 371. Defendant's reasoning to the contrary errs in two critical respects. *Colkley*, 899 F.2d at 301.

First, Defendant's evidence of Detective Ahnstrom's intent to mislead the magistrate amounts to a single, conclusory allegation. (Mot. at 7.) Without elaboration, Defendant asserts

that "Detective Ahnstrom knew [these facts] at the time he swore out the affidavit and

intentionally omitted [them]." (Mot. at 7.)  Defendant's allegation, standing alone, falls far short

of the "detailed offer of proof" necessary to meet the *Franks* standard, and it is precisely the sort

of cursory, offhand allegation rejected by the Fourth Circuit in *Colkley* and elsewhere.  *See* 899

F.2d at 300 (explaining that the Defendant's showing of intentionality or recklessness "must be

more than conclusory"); *see also Haas*, 986 F.3d at 475 ("[T]he mere fact that information was

omitted from an affidavit cannot alone show recklessness or intentionality.").  Defendant offers

the bare fact that Detective Ahnstrom omitted certain information from the affidavit and invites

the Court to infer his intent to mislead from there.  This, the Court will not do.

Second, but equally fatal to his argument, Defendant fails to make a substantial

preliminary showing that, at the time that he swore out the affidavit, Detective Ahnstrom in fact

knew the information that Defendant claims that he intentionally omitted.  As the Government

rightfully points out, Detective Ahnstrom did not attempt to locate records of a 911 call from the

Raceway gas station on the date of the alleged assaults until July 26, 2021 — two days after he

swore to the affidavit. (Resp. at 6.)  It was not until July 26, 2021, then, that Ahnstrom knew that

no record of such a call existed. (Resp. at 6.)

The Government's timeline of events, which Defendant does not contest, thus suggests

that Detective Ahnstrom lacked actual knowledge on July 24, 2021, of the facts that Defendant

claims that he omitted from the affidavit.[3]  (Resp. at 6.)  Both Fourth Circuit precedent and

---

[3]      Similarly, Defendant does not allege that Detective Ahnstrom reviewed video footage of
the Raceway gas station recorded on the date of the alleged assaults before swearing to the
affidavit.  Without showing as much, Defendant cannot make the required "substantial
preliminary showing" that Ahnstrom knew that neither Complainant nor Defendant appeared on
the video footage and intentionally excluded as much from the affidavit. *See United States v.
Lull*, 824 F.3d 109, 115 (4th Cir. 2016) (noting that, in order to warrant a hearing under *Franks*,

common sense advise that an affiant cannot intentionally omit a fact of which he has no actual knowledge. *See United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011) (finding the omission of information impeaching a government witness unintentional where the affiant officer lacked actual knowledge of the omitted information).

Because the evidence tends to demonstrate that Detective Ahnstrom did not learn of the absence of 911 calls originating at the Raceway gas station on July 23, 2021, until two days after he swore to the affidavit, the Court finds that Detective Ahnstrom could not have intentionally omitted such knowledge from the affidavit. *Id.* Detective Ahnstrom therefore did not commit a *Franks* violation in failing to mention these facts, and the Court need not address *Franks'* materiality prong with respect to Defendant's first argument.

**B.    Complainant's Failure to Identify Defendant as Her Assailant During the Photographic Lineup**

Next, Defendant points to Detective Ahnstrom's failure to mention the photographic lineup that he and Officer Cangelosi conducted with Complainant at Chippenham Hospital. (Mot. at 7.) Defendant contends that Detective Ahnstrom intentionally omitted Complainant's inability to positively identify Defendant as her assailant from his affidavit. (Mot. at 7.) Following the same logic underlying his first argument, Defendant further asserts that the omission "prevented a neutral Magistrate from being able to accurately assess the complaining witness's reliability and veracity." (Mot. at 9.) Because the state magistrate therefore could not weigh the significance of Complainant's statements, Defendant concludes, Detective Ahnstrom's omission was material to the magistrate's finding of probable cause. (Mot. at 9.)

---

the defendant "must first make a substantial preliminary showing of the intentionality . . . prong[]").

Here, Defendant advances two theories of intentionality, both of which the Court rejects. First, and in an identical fashion to the first alleged omission, Defendant asserts without explanation that "detective [Ahnstrom] knew [that Complainant could not identify Defendant in the lineup] at the time he swore out the affidavit and intentionally omitted it." (Mot. at 7.)  This perfunctory accusation fails for the same reason that Defendant's earlier, indistinguishable allegation fails: "the defendant must provide facts — not merely conclusory allegations — indicating that the officer subjectively acted with intent to mislead . . . the magistrate." *Moody*, 931 F.3d at 371.

Although the Court notes that this statement regarding Ahnstrom's intent, unlike Defendant's first allegation, rings true — that is, Ahnstrom clearly knew when he drafted the affidavit that Complainant had failed to pick Defendant out of the lineup, yet failed to mention as much in his affidavit — intent in such a narrow sense does not suffice under *Franks*. (Resp. at 7.)

Rather, as the Fourth Circuit noted in *Colkley*, "*Franks* clearly requires defendants to allege more than 'intentional' omission in this weak sense.  The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."  899 F.2d at 301. (quoting *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987)).  *Franks* requires that the defendant point to an "omission [that] is the product of a 'deliberate falsehood or of reckless disregard for the truth.'"  *Id.* (quoting *Franks*, 438 U.S. at 171).  Defendant's one-sentence allegation of intent cannot, standing alone, meet this standard.  The Court therefore rejects Defendant's first theory of intent on the same grounds mentioned *supra*, in Section III.A.

As an alternative formulation of intent, Defendant cites the Fourth Circuit's decision in *Lull* for the proposition that the Court may infer Detective Ahnstrom's intent to mislead from the

omission's significance. *See Lull*, 824 F.3d at 117 ("[T]he significance — or insignificance — of a particular omission to the determination of probable cause may inform [the court]'s conclusion regarding the [affiant]'s intent."). *But see*, *United States v. Clark*, 935 F.3d 558, 566 (7th Cir. 2019) (holding that although "credibility omissions themselves . . . provide sufficient circumstantial evidence to support a reasonable and thus *permissible* inference of reckless disregard for the truth," such omissions "do not *require* courts to infer recklessness"). The Court finds this formulation lacking as well.

In *Lull*, the confidential informant in an illegal drug investigation pocketed $20 from the $240 that a Sheriff's investigator had provided to him to execute a controlled buy. *Id.* at 112. Upon discovering the attempted theft, the Sheriff's Office immediately removed the informant from his role, deeming him "absolutely" unreliable. *Id.* The Sheriff's Office then arrested the informant on a felony theft charge that same day. *Id.*

Within thirty minutes of the informant's arrest, the investigator swore out a search warrant application for which the bulk of the substantive evidence was drawn from the confidential informant. *See id.* at 118. ("When the information provided by the informant is removed from the affidavit, little remains."). Notwithstanding its reliance on information provided by the informant, the investigator's affidavit bore no mention of the informant's theft, termination and arrest. *Id.* at 113.

The Fourth Circuit reversed the district court's order upholding the warrant, finding that the investigator recklessly disregarded whether the omission made the search warrant affidavit misleading. *Id.* at 117. In drawing this conclusion, the Fourth Circuit relied on four factors: "(1) the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant; (2) [the investigator's] knowledge of the consequences of the informant's crime; (3)

the temporal proximity of the arrest to the decision to omit information from the affidavit; and (4) the obvious impact of the informant's misconduct on any assessment of his reliability." *Id.* at 116. Critically, the *Lull* Court noted that "*[t]ogether*, these factors are dispositive *under the circumstances of this case* [to] show that [the investigator] acted at least recklessly." *Id.* (emphasis added).

Relying on *Lull*, Defendant argues that (1) Detective Ahnstrom's omission of the photo lineup is significant and, therefore, (2) the Court should infer that Detective Ahnstrom intentionally omitted the photo lineup evidence from his affidavit. (Reply at 4.) In Defendant's telling, the significance of Complainant's inability to identify her attacker in the photo lineup lies in its exculpatory power. (Reply at 4.) Complainant knew her assailant by the name "Tyrone." (Reply at 4.) Complainant's inability to pick Defendant out of a lineup, then, suggests that Complainant was assaulted by some unknown third person named Tyrone, not Defendant. (Reply at 4.) Defendant contends that, pursuant to *Lull*, the significance of this exculpatory information should "lead this Court to believe that its omission . . . was intentional." (Reply at 4.) The Court, however, finds Defendant's reliance on *Lull* unconvincing.

Draped across the facts in the instant case, the four *Lull* factors largely weigh in the Government's favor. As to the first factor, Complainant was not a paid police informant, and therefore RPD could not have dismissed her from her role in a manner akin to the confidential informant in *Lull*. 824 F.3d at 112. More to the point, Detective Ahnstrom never deemed Complainant unreliable or untrustworthy, and law enforcement did not arrest Complainant in connection with her role as the complaining witness. *Id.* The first *Lull* factor thus weighs against granting Defendant's Motion. *Id.*

Similarly, Detective Ahnstrom did not know that RPD had deemed Complainant unreliable at the time that he drafted the affidavit, because RPD *never deemed Complainant unreliable. Id.* at 116. Of course, Detective Ahnstrom knew when he swore out the affidavit that Complainant had failed to identify Defendant in the lineup. But, as discussed further below, Complainant's inability to positively identify Defendant hardly dents her trustworthiness to a similar degree as a confidential informant's theft of government property dents his. *Id.* The second *Lull* factor therefore weighs against granting Defendant's motion as well.

The third *Lull* factor is the only factor upon which Defendant can convincingly rely. *Id.* The photo lineup occurred, at most, a few hours before Detective Ahnstrom swore to the affidavit. (Resp. at 4.) Complainant's failure to identify Defendant was "undoubtedly fresh in [Detective Ahnstrom]'s mind" as he drafted the affidavit. 824 F.3d at 117. The third *Lull* factor therefore weighs in Defendant's favor. *Id.*

Finally, and most importantly for the Court's purposes here, the fourth *Lull* factor weighs against Defendant. In *Lull*, the Fourth Circuit inferred the investigator's recklessness from the "obvious impact" that the informant's misconduct would have on the magistrate's assessment of his reliability. *Id.* at 116. Here, the impact that Complainant's failure to identify Defendant in a photo lineup would have had on the state magistrate's assessment of her reliability appears muddled at best. Though she failed to pick Defendant out, Complainant "stopped on [Defendant]'s photo several times and stated that he looked like her assailant." (Resp. at 8.) It seems far from "obvious" that including this information in the affidavit would have led the magistrate to discredit Complainant's statements. Quite the opposite, Detective Ahnstrom could have plausibly believed that including a description of the lineup — particularly Complainant's statement that Defendant's picture "looked like her assailant" — would strengthen the affidavit.

Furthermore, the Court must evaluate Detective Ahnstrom's omission of the failed lineup identification in the context of numerous other facts that pointed towards Defendant. For example, Detective Ahnstrom all but definitively linked Complainant's description of her assailant's vehicle with a vehicle registered to Defendant, corroborating not only the vehicle's make, model, location and color, but also the bullet hole in the vehicle's front windshield. (Resp. at 10.) Ahnstrom further corroborated Complainant's story by matching her description of her assailant's apartment with Defendant's apartment, confirming the location, floor and cloth bag that Complainant described as sitting next to the front door. (Resp. at 10.) Viewed in light of this additional evidence, the photo lineup lacks the dispositive significance that Defendant attributes to it. The fourth *Lull* factor thus weighs against Defendant as well. 824 F.3d at 117.

In accepting Defendant's invitation to analogize the instant case to *Lull*, the Court finds that *Lull* counsels a result opposite of that which Defendant seeks. *Id.* Defendant cannot make a substantial preliminary showing that Detective Ahnstrom intentionally or recklessly omitted the photo lineup evidence from the affidavit, and an analysis using the *Lull* factors confirms as much. *Id.* Thus, Defendant's second *Franks* argument fails at the intentionality prong, and the Court need not consider Defendant's arguments regarding materiality.

## C.     Complaining Witness' History of Drug Abuse

Third, and finally, Defendant contends that Detective Ahnstrom intentionally omitted Complainant's previous encounters with law enforcement, her history of substance abuse, and her admitted drug use on the date of the alleged assaults. (Mot. at 7-8.) Mirroring the first two alleged omissions, Defendant all but assumes that Ahnstrom intentionally omitted this information, stating:

> The government acknowledges that the complaining witness has a
> previous history with law enforcement as it relates to substance abuse and
> overdoses, and had seven prior contacts recorded in the Richmond Police
> Department's PISTOL system.  However, they argue that there is no evidence that
> Detective Ahnstrom knew this at the time he swore out the search warrant.  They
> further argue that Detective Ahnstrom did not know [Complainant] was high on
> the night she made the allegations, and that even if he was aware of this
> information that he did not intentionally omit it and that it was not material to
> probable cause.  First, **it is unbelievable that Detective Ahnstrom, a Richmond
> Police officer with fifteen years of experience would not run a record check
> on the complaining witness in the Richmond Police Department's database.**

(Reply at 3) (emphasis added).

From there, Defendant cites this Court's decision in *United States v. Jones* for the

proposition that "evidence of a witness's use of drugs and/or addiction has been recognized as a

factor that bears on a witness's credibility." (Reply at 3) (citing *United States v. Jones*, 2013 WL

2240834 (E.D. Va. May 21, 2013) (Spencer, J.)).  Because Complainant's "reliability and

veracity . . . [were] [] key factors to the probable cause determination," Defendant argues that the

Court must find the omission of facts concerning Complainant's substance abuse material.

(Reply at 3.)

Again, Defendant's argument cannot satisfy the *Franks* intentionality prong.  *Haas*, 986

F.3d at 476-77.  Defendant offers pure speculation of Ahnstrom's intent, a crude substitute for

the "substantial preliminary showing" of "subjective intent" to mislead that *Franks* requires.  *Id.*

As the Government points out, Defendant "offers no evidence" that Detective Ahnstrom knew of

Complainant's prior interactions with law enforcement when he drafted the affidavit.  (Resp. at

9.)  Similarly, Defendant provides no facts to support his allegation that Ahnstrom knew

Complainant was high when she was admitted to Chippenham Hospital.  (Resp. at 9.)  Rather,

Defendant surmises Ahnstrom's intent to mislead and then suggests that the Court hold an

evidentiary hearing to sort out Defendant's accusations.  (Reply at 3.)  Such is not the order of

operations that the Supreme Court requires under *Franks*.  438 U.S. at 171 ("To mandate an

evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine . . . [A]llegations must be accompanied by an offer of proof.")

The absence from the affidavit of information related to Complainant's substance abuse yields to a simple explanation: the expeditious pace at which Detective Ahnstrom's investigation progressed. The interval between Detective Ahnstrom's initial interview with Complainant and the time he drafted the affidavit amounted to fewer than eight hours. (Resp. at 9-10.) Given the speed at which Detective Ahlstrom's investigation advanced, it is entirely possible that Ahnstrom failed to run a criminal history report or review Complainant's hospital records before swearing to the affidavit. *Cf. United States v. Shaw*, 2022 WL 1143524, at *9 (E.D. Va. April 18, 2022) (noting that omissions from the affidavit "likely resulted from the rapidly unfolding investigation into Defendant's activities" rather than an intentional deception).

And, here again, the other evidence corroborating Complainant's account vitiates the significance that Defendant assigns to Complainant's prior encounters with police. From the bullet hole in the windshield of Defendant's vehicle to the cloth bag sitting nearby the apartment registered as Defendant's address, Detective Ahnstrom gathered ample evidence to corroborate Complainant's story, and her prior record did nothing to undermine her credibility.

Because Defendant cannot demonstrate that Detective Ahnstrom knew of Complainant's prior interactions with law enforcement or history of substance abuse, let alone that he intentionally omitted such information from the affidavit, the Court finds that Defendant's final argument falls short at *Franks*' intentionality prong.

Accordingly, the Court need not address the materiality prong here either.

## IV.   CONCLUSION

For the reasons set forth above, the Court will DENY Defendant's Motion to Suppress

and related request for a *Franks* hearing.  (ECF No. 20.)

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

_____/s/_____

David J. Novak

United States District Judge

Richmond, Virginia
Date:  October 6, 2022